## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ARBIE PANCK,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| **v** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **UNITED OF OMAHA LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT

Plaintiff Arbie Panck ("Plaintiff" or "Ms. Panck") brings this action for violations of the Employee Retirement Income Security Act of 1974 ("ERISA") committed by United of Omaha Life Insurance Company ("United"), in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, Stardog Union ("the employer"). In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys:

## INTRODUCTORY STATEMENT

1.   This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA").  This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure disability benefits due to Plaintiff through the group insurance policies sponsored by the employer.

2.   The Plaintiff seeks all benefits to which she may be entitled should this Court determine she is "disabled," including long-term disability and life-coverage-during-disability benefits under policies issued or administered and underwritten by United.

3.   Plaintiff seeks such benefits together with any other disability-related benefits the plan may provide based on the conditions documented in her medical records and opinions of her treating physicians, independent physicians, and other assessment information.

## JURISDICTION

4.   Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq.  The Plan "may be found" within this district.

2

5. Jurisdiction is further appropriate under 28 U.S.C. § 1332.

6. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant and Plaintiff may be found or reside in this District.

## PARTIES

7. Plaintiff Arbie Panck is a participant in the Plans at issue and thus entitled to benefits available thereunder.

8. Defendant United is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

9. United is a "fiduciary" of The Plans as that term is defined by 29 U.S.C. § 1002(21).

10. One of United's designated agent for service of process is:

The Prentice-Hall Corporation System, Inc.
641 South Lawrence St.
Montgomery, AL 36104

11. United is an entity exercising authority or control respecting the management or disposition of Plans' assets or the personnel exercising said authority over Plan assets.

12. United is an entity providing services to The Plans at issue.

3

13.     United is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## THE PLAN

14.     The plan sponsor is the employer. This company entered into a policy agreement with United to furnish benefits for its employees.

15.     The policy provides long-term disability coverage up to the Social Security normal retirement age, which for Ms. Panck is age 67.

16.     For the first two years, disability benefits are paid if United finds that Ms. Panck was disabled from her own occupation.

17.     After two years, disability benefits are paid if United finds that Ms. Panck was disabled from any occupation Ms. Panck would be reasonably fit to perform by reason of her current training, education, experience, age, physical and mental capacity.

### United's Liability

18.     Ms. Panck was a participant in the above Plans in connection with employment with her employer. A disability claim arose on October 17, 2023 and the claim was paid. Ms. Panck had several conditions.

### MINOCA

19.     MINOCA was one of the primary bases of this claim. That is myocardial infarction with no obstructive coronary arteries. This was the known

4

diagnosis for Ms. Panck and serves as a significant part of the basis as to why this claim was paid prior to August 5, 2025.  This diagnosis means that Ms. Panck suffered heart muscle damage due to lack of blood supply to her heart but that the damage was not caused by blockage in the main arteries supplying the heart muscles. It is diagnosed with severe chest pain in an emergency setting such as an emergency department, with increased troponin in the blood. That is an objective lab test documenting that heart muscle protein found in the blood demonstrates heart damage.

20.    MINOCA causes not only chest pain pressure or tightness but also shortness of breath, dizziness nausea, sweating, and fatigue. It occurs with periodic episodes that may be debilitating for an entire day.

### COPD - a Complicating and Disabling Condition

21.    Ms. Panck also suffers from chronic obstructive pulmonary disorder which United has ignored.  On September 29, 2025, a pulmonologist tested her with the spirometer which reflected FEV1 42%.  Under the GOLD (Global Initiative for Chronic Obstructive Lung Disease) system, an FEV1 between 30% and 49% indicates Stage III (Severe) COPD.

22.    Peer reviewed articles such as Diagnostic imaging in COPD furnished in the National Library of Medicine note that  "COPD is characterized by expiratory airflow obstruction due to emphysematous destruction of the lung

parenchyma [the tissue responsible for gas exchange] and remodeling of the small airways." (Brackets added). The Social Security Administration documents that Stage III COPD is a scheduled listing in its Bluebook qualifying for Social Security disability benefits.

23. As noted in her visit of September 29, 2025, Ms. Panck developed shortness of breath which worsens with any exertional activity as well as simply with weather changes. Ms. Panck has long and persistent eosinophilic asthma. While MINOCA is random and occurs apart from exertion, COPD worsens with exertion.

**Depression**

24. Ms. Panck contends she would not be disabled from depression if her other conditions did not leave her chronically sick. Dr. Arcenas' comments on the depression not being severe or it would require therapy of some sort is misplaced.

25. The cause of the depression limitations is chronic illness which has not been resolved. The U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, National Institutes of Health, recognizes the link between chronic illness and depression. See, NIH Publication No. 24-MH-8015 Revised 2024, and titled <u>Understanding the Link Between Chronic Disease and Depression</u>.

**Claim Termination with No Improvement**

26.     United found Ms. Panck disabled from her occupation, which was a sedentary occupation, for the time frame of January 23, 2024, until August 5, 2025. That claim was denied by Taylor Wilson, BCS.

27.     Ms. Panck appealed and Taylor Wilson, the same person who terminated the claim, responded to the appeal and denied the appeal by letter dated December 17, 2025.  The letter denying the first appeal was received by Ms. Panck by email on December 22, 2025 according to United. It was received by mail on or about December 30, 2025.

28.     The reasons for denying the claim as stated in the letter, which is attached as Exhibit 1, are as follows:

a.      Initially a nurse consultant acknowledged the diagnosis of heart attack and MINOCA (myocardial infarction with non-obstructive coronary arteries), with no blocked arteries.  Unstable blood pressure was noted as ongoing, along with chest pain, heart palpitations, fatigue, and headaches.

b.      This nurse review failed to note the pulmonary issues.

c.      Something was not clear enough to United, for undisclosed reasons, when it began reviewing the claim under the any occupation definition in the Plans.  Given Ms. Panck was disabled from a sedentary occupation,

7

this was puzzling to her and was suspicious for an effort to terminate the claim to honor United's conflict of interest.

d.      United hired record reviewing doctors from its regular vendor, to generate support for a claim denial. It hired a cardiologist and a psychiatrist. A pulmonologist was not consulted.

e.      United relied on the report mostly from the cardiologist trained at a medical school in India, Dr. Prashanthi Atluri. She opined there were no restrictions, even though treating physicians, including a cardiologist, had found limitations.

f.      Dr. Atluri admitted the chest pains can be debilitating for Ms. Panck but contended they did not interfere with the functional demands of a full-time sedentary occupation. She never examined Ms. Panck. There was no clear evidence provided to support this opinion.

g.      United also hired a psychiatrist, Dr. Maria Acenas, who opined without examining or even talking to Ms. Panck that there was no support for any psychiatric impairment on exactly August 6, 2025 and thereafter. She contended mental status examinations were all normal, and that Ms. Panck was not in group or individual psychotherapy as a reason for her opinion.

29. Ms. Panck did not experience a dramatic, instant recovery from MINOCA , pulmonary issues, and anxiety/depression on August 5, 2025. In fact, all symptoms continued without change for the better.  In fact, there was more support for the claim after August 5, 2025.

30. These reviewers did not offer any explanation as to how Ms. Panck was disabled on August 4, but not on August 5, 2025. This was random. United's Ms. Taylor contended that "… there are no specific heart – related test results or exam findings showing a condition severe enough to stop you from doing the sitting and mental tasks described in your job analysis."  However, that ignored that United found disability for two years and now the same evidence was found not to support the claim. This was an inconsistent, irrational decision.

31. United further asserted, "While you report episodes of chest pain that can be very uncomfortable, these episodes vary and are not consistently linked to activity or supported by clinical evidence." Finally, it also stated "there is no proof of ongoing arrhythmia, heart failure, or reduced blood flow that would prevent you from doing full-time sedentary work."

32. This assertion was not true as any experienced cardiologist trained to treat MINOCA would understand. Part of the diagnosis of MINOCA is just that … chest pain can be experienced without physical activity. In fact, the episodes were supported by clinical evidence including comprehensive invasive coronary

function testing at UAB on 11/12/24, which objectively demonstrated severe coronary microvascular dysfunction, including a profoundly abnormal coronary flow reserve (CFR) of 1.0 and elevated left ventricular filling pressures (LVEDP 26 mmHg).  A coronary flow reserve of 1.0 represents severe impairment of coronary vasodilatory capacity and provides objective confirmation of clinically significant microvascular disease. This decision was irrational.

33.    Ms. Panck's conditions and limitations met the definition of disability.  Ms. Panck was precluded from performing at least one of the material duties of her regular occupation on a part-time or full-time basis and she is unable to generate 99% of her basic monthly earnings which were earnings before she became disabled.

34.    Further, Ms. Panck cannot perform any gainful occupation definition which pertained to the time frame after benefits were paid for 24 months. The claim was paid commencing as of January 23, 2024, which meant that the decision was made only as to the own occupation definition of disability which would not have ended until a few months later on January 23, 2026. Thus, by denying the claim under the own occupation definition, it only involved 5 months and 18 days of unpaid benefits. If there was litigation United would contend the Court could only award those few months of benefits under the own occupation standard and the Court must remand the matter as to subsequent months so that it

could then evaluate the claim under the any occupation standard. That would greatly delay Ms. Panck's receipt of benefits.

35. This was a "dirty" tactic demonstrating a corrupt, profit driven claim process. This has been observed in other cases and reflects a pattern and practice of a bad faith tactic to force claimants to only receive a few months of benefits and then require a remand for evaluation of the claim at the any occupation phase.

36. United did not provide any information demonstrating how this "own occupation" decision was consistent with its prior decisions finding disability for the timeframe of January 23, 2024, through August 5, 2025.

37. Ms. Panck contends that this denial of benefits was wrong. She also demonstrated that she continues to be disabled as to the "any gainful occupation" standard which was applicable as of January 23, 2026.

**The Inability to Work With Reasonable Continuity**

38. Every full-time and part-time sedentary occupation requires the ability to work with reasonable continuity. This means, in part, keeping sick leave absences to less than 2 random days per month.

39. The U.S. Bureau of Labor Statistics has documented the average number of sick days and vacation days provided by employers in the national economy. Whether a long-term employer such as after 20 years or an employee

11

of only 1 year of service, the greatest number of sick leave days in private industry is static at 7 days per year and as to state and local governments it is 12 days per year. Thus, no employer provides sick leave of two or more days per month in the United States.

40. The difference between sick leave days and vacation leave days typically speaks to whether the day taken is random or scheduled. Employers are better able to deal with scheduled absences as opposed to random absences. Thus, vacation days are intended for leisure, travel, and personal use, and typically must be scheduled and approved in advance. Sick days are restricted to health-related absences, such as personal illness, medical appointments, or caring for a sick family member.

41. The Social Security Administration finds disability when there is no ability to work in a sustained manner. Its guidelines should be instructive to United, especially since United requires claimants to apply for Social Security disability. The SSA recognizes that being able to perform a job for a few days or weeks does not mean an individual can sustain employment. If your medical condition causes you to miss work frequently (e.g., more than 1-2 days a month) or prevents you from maintaining the pace of a standard 40-hour work week, you are disabled.

42.    Basically, no employer is going to hire an individual who is going to be absent from work 2 or more random days every month. United acknowledges that Ms. Panck has periods of severe discomfort, but disregards reasonable continuity work requirements.

43.    MINOCA was one of the primary bases of this claim. Again, that is myocardial infarction with no obstructive coronary arteries. This was the known diagnosis for Ms. Panck and serves as a significant part of the basis as to why this claim was paid prior to August 5, 2025.  It appears that the physicians reviewing the records were not very familiar with this condition and lacked the expertise necessary.

44.    Counsel for Ms. Panck attempted to contact these physicians relied on by United because they referenced matters which are irrelevant to MINOCA. Ms. Taylor Wilson refused to permit contact. That was not fair given Ms. Panck's physicians had been contacted. Accordingly, Ms. Panck revoked any permission to talk with her treating physicians. During the appeal, however, United violated the privacy rights of Ms. Panck and contacted her treating physicians anyway. United made clear it was not going to conduct a fair review with its "dirty" tactics and conduct.

45.    Ms. Panck was given the diagnosis of MINOCA per two respected cardiologists. United's cardiologists fail to understand MINOCA and this

13

included Dr. Atluri and Dr. Gurav. They pointed out the lack of obstruction of an artery which is irrelevant given the diagnosis.   This claim was denied without any legitimate evidence.

46.    She continues with severe COPD and depression as well which combine to limit her.

47.    Despite the unfairness with the claim process, the Plaintiff timely appealed the clam decision on June 17, 2026.  It was submitted via facsimile and by email. All exhibits were received on that date. Additionally, the appeal with exhibits was sent via priority mail and received on June 22, 2026.  United had 45 days to decide the appeal unless there were circumstances beyond its control. No such circumstances developed.

48.    No good cause justifying the claim process unfairness has been furnished.

49.    By law and under the plan document, when United did not decide the claim in the time required, the claim process was exhausted by the lack of a full and fair review. Further, when no good cause for the abuse of the claim process was provided the claim process was exhausted. Thus, the claim process is further exhausted. Further exhaustion is futile.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Arbie Panck respectfully requests this Court find jurisdiction and venue appropriate, and after trial, grant the following relief:

A.      For reversal of the decision terminating benefits and payment of all benefits on that date and going forward , and for *de novo* review given the lack of a decision and the lack of a full and fair review;

B.      For interest on all past due benefits at 1.5% per month or such interest rate as the Court find equitable;

C.      For attorney and paralegal fees, costs and case expenses;

D.      For such equitable relief as the Court finds appropriate;

E.      For declaratory relief inclusive of a directive that Defendant perform a full and fair review on future benefit decisions;

F.      For such other relief as may be proper in the Court's view.

Respectfully submitted,

David P. Martin
ASB-3500-M68D
**The Martin Law Group, LLC**
**Attorney for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205)343-1781
david@erisacase.com

**Plaintiff's  Address :**

15

Arbie Panck
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402


**Defendant' s Address:**

UNITED OF OMAHA LIFE INSURANCE COMPANY
c/o The Prentice-Hall Corporation System, Inc.
641 South Lawrence St.
Montgomery, AL 36104

## REQUEST FOR SERVICE BY CERTIFIED MAIL

The Plaintiff requests service of this Complaint on the Defendant by Certified Mail pursuant to Federal Rules of Civil Procedure 4(e)(1).

David P. Martin
ASB-3500-M68D